IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DARRYL EDNEY,

    Petitioner,

v.                                                            CASE NO. 4:12-cv-460-RH-GRJ

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, an inmate in the custody of the Florida Department of Corrections, initiated this case by filing a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) After his petition was served, Petitioner sought leave to amend, and Petitioner filed his Amended Petition on March 22, 2013. (Doc. 11.) Respondent then filed a Motion to Dismiss Grounds Five, Eight, Nine, Ten and Eleven as Untimely, and Petitioner filed a response in opposition. (Docs. 15, 21.) The Court granted the Motion to Dismiss, and the parties subsequently briefed the remaining claims in grounds 1-4, 6, and 7 of the Amended Petition, which are now before the Court for review. (Docs. 31, 32.) Upon due consideration of the Amended Petition, the Response, the state court record,[1] and the Reply, the undersigned recommends that the Amended Petition be denied.[2]

---

[1] The state court record is located at Doc. 15, attached to Respondent's Motion to Dismiss.

[2] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules

## Summary of State Court Proceedings

Petitioner's state court procedural history is as follows. Following a jury trial, Petitioner was convicted of sexual battery on a child under 12 years of age by an adult 18 years of age or older. (Doc. 15-1 at 35.) He was adjudicated guilty, and sentenced on October 19, 2007, to life imprisonment. (Doc. 15-1 at 54-59.) Petitioner then filed a motion to correct sentencing error pursuant to Fla. R. Crim. P. 3.800(b)(2), arguing that court costs and fines should not have been imposed. (Doc. 15-1 at 76-81.) The trial court granted the motion in part, removing the $2,000 fine imposed. (Doc. 15-1 at 82-84.)

Petitioner appealed his conviction and sentence, which was affirmed by a written opinion by the First DCA on March 10, 2009. (Doc. 15-2 at 180-86.) The written opinion addressed only the imposition of costs. Because the First DCA issued a written opinion, Petitioner could have sought discretionary review in the Florida Supreme Court, but he did not do so. Accordingly, Petitioner's conviction became final 30 days later, on April 9, 2009, when the time to seek discretionary review expired. FLA. R. APP. P. 9.120.

On April 23, 2009, Petitioner filed a Rule 3.850 motion for post-conviction relief. (Doc. 15-2 at 194-207.) Petitioner filed an amended Rule 3.850 motion and memorandum of law on December 2, 2009. (Doc. 15-2 at 257-70.) The trial court held an evidentiary hearing on the motion on March 29, 2010. (Doc. 15-2 at 288; 294.)

The Court denied the motion orally at the end of the hearing, and followed it with

---

Governing Habeas Corpus Petitions Under Section 2254.

a written order the same day.  (Doc. 15-2 at 289.)  Petitioner appealed, and the denial was *per curiam* affirmed by the First DCA.  (Doc. 15-3 at 59.)  Petitioner filed a motion for rehearing, clarification, and written opinion, which was denied on September 30, 2011.  (Doc. 15-3 at 61-63; 65.)  The First DCA issued the mandate on October 18, 2011.  (Doc. 15-3 at 67.)

While his appeal of the denial of his first Rule 3.850 motion was still pending, Petitioner filed a second Rule 3.850 motion on June 14, 2011, on the basis of newly discovered evidence.  (Doc. 15-3 at 74-86.)  The motion was denied on August 26, 2011, because it did not meet the definition of newly discovered evidence, and thus was procedurally barred as successive and untimely.  (Doc. 15-3 at 87-88.)  Petitioner appealed, and his appeal was denied because it was untimely.  (Doc. 15-3 at 93.)  However, the First DCA reinstated the appeal at Petitioner's request, and subsequently *per curiam* affirmed the denial of his second 3.850 motion.  (Doc. 15-3 at 95; 133.)  Mandate issued October 2, 2012.  (Doc. 15-3 at 135.)

Petitioner filed his original federal habeas petition on September 10, 2012.  (Doc. 1.)  Petitioner provided the amended petition to prison officials for mailing on March 18, 2013.  (Doc. 11.)

### Section 2254 Standard of Review and Standard of Review for Ineffective Assistance Claims

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes limitations on the scope of this Court's review.  Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a

decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow,* ___ U.S. ___, 2013 WL 5904117, *4 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 2013 WL 5904117, *4 (standard for reviewing claims of legal error by state courts is "highly deferential"). This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Id*. This highly deferential standard carries special force in habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[3]—a claim state courts have now

---

[3]*Strickland v. Washington*, 466 U.S. 668, 686 (1984) (holding that to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. A court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong).

*Case No: 4:12-cv-460-RS -GRJ*

adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.  AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'" *Id*. (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011).  "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. (quoting *Harrington*, 131 S.Ct. at 786).  "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Id*. (quoting *Harrington*, 131 S.Ct. at 786).

Because some of Petitioner's claims raise the issue of counsel's effectiveness, a review of *Strickland*'s prejudice and performance prongs is appropriate.  *Strickland*, 466 U.S. at 686*; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).  With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).  The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a

strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). This standard is objective, and "it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight." *Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007). "The relevant question is not what actually motivated counsel, but what reasonably could have motivated counsel." *Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

The Eleventh Circuit has recognized that given these principles and presumptions "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 n.15 (11th Cir. 2000) (en banc). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. 28 U.S.C. § 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306.

## Discussion

***Ground 1: Petitioner's first claim that the trial court erred by permitting the state to introduce the prior consistent statements of the victim is a purely state law claim and is unexhausted and procedurally defaulted.***

Petitioner contends that the trial court erred by permitting the State to introduce the prior consistent statement of the victim at trial. Petitioner is not entitled to federal habeas relief on this claim because it is not a federal claim. Instead, Petitioner's claim is founded on state rules of evidence, and as such is not cognizable on federal habeas review, despite Petitioner's attempt to frame the issue as one of due process and equal protection. *Branan v. Booth,* 861 F. 2d 1507, 1508 (11th Cir. 1988) ("Although petitioner alleges violations of federal law, it is clear that this petition is based exclusively on state law issues which were merely 'couched in terms of equal protection and due process.'") (citing *Willeford v. Estelle,* 538 F. 2d 1194, 1196-98 (5th Cir. 1976).

Furthermore, the claim was never presented to the state trial court or the state appellate court on direct appeal as a federal claim. Rather, it was presented purely as a matter of state law on direct appeal, with citations exclusively to Florida cases. (Doc. 15-2 at 111-16.) Consequently, because the claim was never presented to the state courts as a federal claim, Petitioner failed to properly exhaust the claim. The claim is now procedurally defaulted and Petitioner has not demonstrated any cause or prejudice for the default. The claim therefore is due to be denied.

***Ground 2: Petitioner's claim that the trial court erred by permitting the State to amend the information on the morning of the trial fails and is unexhausted and procedurally defaulted.***

Petitioner contends that the state court erred by permitting the State to amend

the information on the morning of his trial.  Although Respondent characterizes this issue as one of state law, under the Sixth Amendment, Petitioner has a right to reasonable notice of the charge against him.  *In re Oliver*, 333 U.S. 257 (1948) (A person's right to reasonable notice of the charge against him is applied to the states through the Fourteenth Amendment.)  However, the sufficiency of a state indictment or information is not a matter for federal habeas corpus relief unless it can be shown that the indictment or information is so defective that the convicting court had no jurisdiction. *Murphy v. Beto*, 416 F.2d 98 (5th Cir. 1969); *Branch v. Estelle*, 631 F.2d 1229 (5th Cir. 1980); *DeBenedictis v. Wainwright*, 517 F.Supp. 1033, 1036 (S.D. Fla. 1981).  There is no such allegation in this case, and the information was determined to be sufficient under state law by the trial judge, who permitted the amendment.  (Doc. 15-1 at 209.) A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief because no federal constitutional question is presented.  28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

 Furthermore, the claim was never presented to the state appellate court on direct appeal as a federal claim.  Rather, it was presented purely as a matter of state law, with citations exclusively to Florida cases.  (Doc. 15-2 at 117-19.)  Consequently, because it was never presented to the state courts as a federal claim, Petitioner failed to properly exhaust the claim. The claim is now procedurally defaulted and Petitioner has not demonstrated any cause or prejudice for the default.  The claim therefore is due to be denied.

***Ground 3: Petitioner's claim that the prosecutor committed fundamental error during his closing argument is without merit.***

Petitioner alleges that the prosecutor made improper remarks during his closing argument, by stating that if the jury believed the victim's testimony then the State had proven the case. Petitioner contends that this shifted the burden of proof in this case. Petitioner raised this claim as a federal claim in ground 3 of his direct appeal, which was affirmed by the First DCA. (Doc. 120-121.)

In some circumstances, improper jury argument by the prosecution may violate a defendant's constitutional right to a fair trial. *See, e.g., Houston v. Estelle*, 569 F.2d 372, 380 (5th Cir. 1978)*; Cronnon v. State*, 587 F.2nd 246, 251 (5th Cir. 1978). The standard is: (1) whether the argument was improper; and (2) whether any improper argument was so prejudicial as to render the trial fundamentally unfair. *Davis v. Kemp*, 829 F.2d 1522, 1526 (11th Cir. 1987).

Although Petitioner takes issue with the prosecutor's remark during closing—which suggested that the state had proven its case if the jury believed the victim— the prosecutor's comment was not improper because the victim's testimony established the elements of the crime. And when the comment is viewed in the context of the entire trial the comment did not render the trial fundamentally unfair. (*See* Doc. 15-1 at 269-79, relevant testimony of the victim.)

The benign nature of the prosecutor's comment is underscored by the fact that defense counsel never objected to the prosecutor's remarks. Further, the jury was not mislead as to the burden of proof in that the trial court instructed the jury that the State "must prove all elements of the crime charged beyond a reasonable doubt," and then

went on to explain the three elements of the crime.  (Doc. 15-2 at 76.)  Thus, even assuming there was some impropriety in the prosecutor's comment because the trial judge properly instructed the jury as to the correct burden of proof the comment fails to demonstrate error. *United States v. Simon*, 964 F.2d 1082, 1086 (11th Cir. 1992) (even if prosecutor's remarks were improper, trial court's instructions to the jury cured the error).

In sum, Petitioner has failed to show that the prosecutor made any improper remarks nor has Petitioner shown that the fundamental fairness of the trial was endangered.  Therefore this ground has no merit.

***Ground 4: Petitioner's claim that his counsel was ineffective by failing to procure a medical expert to discredit or challenge the credibility of the victim has no merit.***

Petitioner contends that his counsel performed deficiently by failing to secure testimony from a gynecologist or other medical expert on the victim's physical condition. Petitioner argues that if defense counsel had presented evidence from a medical expert that the victim's physical condition was inconsistent with being sexually battered, Petitioner would not have been convicted.

This claim was rejected by the state post-conviction court, which reasoned as follows in announcing the decision from the bench:

> As to the 2 and 3, the psychological report and physical report Ms. Whisnant testified that she didn't make a conscious choice, because it essentially wouldn't have dawned on her to do it because there was no legal basis to do it. I don't find if you said to a lawyer why didn't you move to recuse the State Attorney's Office, well I didn't think of it. But it wouldn't have worked and it was pointless to try to get Mr. Meggs' Office off of this, so I didn't do it. I don't find that simply because Defense Counsel was honest and say it didn't dawn on me to do something that was pointless

that that makes it any less of a decision. Ms. Whisnant made a decision to attack the credibility of the victim in the best way she knew how which was to come up as Mr. Akbar knows which is contradictory testimony and did not in fact order a physical or psychological exam and she's now stated the reasons that it would have been in her mind pointless which is why she wouldn't have thought.

So I think it was – she was not deficient in failing to ask for the following reasons. First, because as she pointed out it would have been pointless in her mind as a legitimate tactical decision in hindsight not to do so based on her own explanation as Ms. Whisnant. Second, I find under the facts of this case without any evidence to suggest that this young woman had a psychological problem more than two years after the alleged incident and there would have been a valid physical – or a physical examination would have yielded any results. There's not a chance in the world under the case law that any test would have been ordered. So I believe that Ms. Whisnant in hindsight made exactly the right call which is, I wouldn't have thought of it because it would have been pointless under the facts of this case. So I do not find deficient performance.

Moreover, even if she should have asked as I noted I don't think the motions would have been granted but even if they had been granted a physical exam two years after the fact and a psychological two years after the fact there has to be some showing that there would have been some point in doing that other than it would have been nice to have it. On this record, that's why I asked the questions about whether or not – was there anything from the CPT or anything prior to the trial or any other person's statement or depo that gave any reason to believe that she has such psychological problems that she could have been tested under DSM4 and so forth. Or did she do anything or exhibit anything at trial that gives rise to me believe [*sic*] that there would have been some point to running these tests such that they would have produced exculpatory or helpful evidence to the defense's cause. There's absolutely nothing before me and it's incumbent upon the defendant bears the burden to show prejudice to the outcome would have been different. And I have absolutely nothing for me other there would have been motions that would have been denied by Judge Dekker and even if they had been granted there's absolutely no showing it would have yielded anything that would have in fact proven beneficial to the defense. . . .

For these reasons I find as to 1, 2, 3, and 4 there was no deficient performance.

> Moreover as I've noted for the record I find there's no prejudice and no showing of – no prejudice in fact and then no showing of prejudice as to 2 and 3.

(Doc. 15-3 at 26-29.)

The record reflects that at the evidentiary hearing counsel testified that requesting a physical examination did not even occur to her in this case, but generally she would not have requested a physical examination because in her experience having worked on sex crimes cases previously experts typically testified that victims usually did not show any physical signs of trauma, even in very young children. Accordingly, on this record, the Court cannot say that counsel's decision not to request a physical exam or secure testimony from a gynecologist was unreasonable.

However, even assuming it was deficient not to request such an examination and secure expert testimony, Petitioner has not shown that but for the error there was a reasonable probability that the outcome of the trial would have been different, especially in this case, where there were a number of years between when the sexual battery occurred and when the child first reported it, thus diminishing the likelihood of any findings of trauma. Furthermore, a physical examination would not have bolstered Petitioner's defense because his defense was that the child victim fabricated the story of the sexual battery to cover up her sexual activity when her mother threatened to take her to the gynecologist to see whether she was a virgin. Thus, under Petitioner's own theory, there would not have been a finding that the child's hymen was still intact.

Accordingly, the Court has no trouble concluding on this record that Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to or an unreasonable application of *Strickland*.

### Ground 6: Petitioner's claim that his counsel was ineffective for failing to rehabilitate Petitioner's testimony of past felony and misdemeanor convictions involving dishonesty also has no merit.

Petitioner alleges trial counsel was ineffective for failing to rehabilitate his credibility after he testified that he had been convicted of past felonies and misdemeanors involving dishonesty. He argues that this adversely affected the jury's perception of his credibility.

Petitioner raised this claim in his 3.850 post-conviction motion, and it was subject to an evidentiary hearing. The state court rejected this claim in an oral ruling as follows:

> Turning to issue 4 which was the record of the defendant, Mr. Edney testified only briefly. His testimony begins on 179 and ends on 181. He essentially denied that he had ever done anything with the putative victim. That is he had never sexually touched [victim]. The anticipating, in trying to blunt the blow from the cross examination of Mr. Allman, Ms. Whisnant simply asked if you'd been convicted of felonies or crimes involved with dishonesty. It was on page 180, there was a quick question a quick answer and she moved on.
>
> I would note for the record the cross-examination - the word cross examination begins on page 181 but doesn't really start until 182. Mr. Allman cross examined Mr. Edney for one page basically, in the transcript briefly, did not mention his prior record, did not make it a feature of the case and did not make a big deal out of it. Why is that important? Because Ms. Whisnant did exactly what she said her trial strategy was, namely to limit the blow of the prior record by bringing it out herself and then making Mr. Allman look like he was wasting everybody's time if he raised it again. So she did exactly what she intended to do which was limited the question and answers to about four sentences and didn't turn it into a big issue.

> Moreover, I find Ms. Whisnant's testimony to be credible when she says that I had to make a tactical decision and the last thing I wanted the jury to know was Mr. Edney used cocaine and Mr. Edney had a prior violent act because that would surely have been damaging had I opened the door to that. I find that was a legitimate tactical decision and her – was not deficient performance based not only was it appropriate calculation but in fact her strategy worked when you read the transcript in terms of diminishing the important of any prior record.
>
> Moreover in light of the testimony of the fact that he was asked did you have a propr felony, yes, and nothing more would not have – when you consider all the facts of the case, the testimony, closing arguments, the entire trial transcripts would not have effected the outcome of the case so he's not prejudiced thereby.

(Doc. 15-3 at 24-26.)

The record reflects that at the evidentiary hearing Petitioner's trial counsel testified that she did not want to open the door for the prosecutor to elicit further information about Petitioner's convictions in view of the fact that one of Petitioner's convictions involved throwing a deadly missile at the victim's mother, and another one was for cocaine that counsel thought was damaging. Thus, counsel made a strategic decision to limit Petitioner's testimony about his convictions. On this record, the Court cannot say that this strategy by counsel was unreasonable.

Even assuming it was error not to rehabilitate Petitioner after his testimony about his convictions, Petitioner has not shown that, but for the error, there was a reasonable probability that the outcome of the trial would have been different. If counsel had attempted to rehabilitate Petitioner, the state could have cross examined Petitioner about his prior convictions, and thus informed the jury that Petitoiner was convicted of

throwing a deadly missile at the mother of the victim in this case, and was convicted of possession of cocaine.

Accordingly, the Court concludes that on this record Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was contrary to or an unreasonable application of *Strickland*.

### Ground 7: Petitioner's claim that trial court committed a fundamental miscarriage of justice in ruling in Petitioner's 3.850 motion is not cognizable on federal habeas review.

In this ground, Petitioner attempts to re-hash his previous ground that counsel failed to request a physical examination of the victim. Petitioner says that in light of this deficiency the state court incorrectly ruled on his 3.850 motion, resulting in a fundamental miscarriage of justice.

In addition to the fact that there is no merit to Petitioner's argument that his counsel was deficient for failing to request a physical examination of the victim, this claim is not cognizable on federal habeas review.  As the Eleventh Circuit has noted:

> Federal habeas relief is available to remedy defects in a defendant's conviction and sentence, but 'an alleged defect in a collateral proceeding does not state a basis for habeas relief.' *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004); *see also Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) (collecting cases), cert. Denied, — U.S. — 130 S.Ct. 500, 175 L.E. 2d 355 (2009).  There is a valid reason behind this principle: '[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment - *i.e.*, the conviction itself - and thus habeas relief is not an appropriate remedy.' *Carroll*, 574 F.3d at 1365.

*Alston v. Dept. of Corr.*, 610 F.3d 1318, 1325 -1326 (11th Cir. 2010).

Collateral criminal proceedings in Florida are a state-created right, and a challenge to those proceedings concerns matters of state law that do not provide a basis for federal habeas relief. *Alston*, 610 F.3d at 1326. In view of this authority, it is clear that because Petitioner's seventh claim concerns an attack on the state collateral proceedings and not a direct attack on the validity of his conviction he is not entitled to review of this claim. This claim is therefore due to be dismissed.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Upon due consideration, it is **ORDERED** that:

1.  The Clerk must **SEAL** the exhibits attached to Doc. 15, because the exhibits contain the un-redacted name of the minor victim.

And, for the foregoing reasons, it is respectfully **RECOMMENDED** that:

1. The Amended Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus By a Person in State Custody, Doc. 11, should be **DENIED**.

2.  A certificate of appealability should be **DENIED.**

**IN CHAMBERS** at Gainesville, Florida, this 19th day of June, 2015.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.